**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | | |
|---|---|---|
| JACQUELINE OLSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC. and MIDLAND FUNDING, LLC,<br><br>Defendants. | ) | Case No.: 17-cv-1135<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Jacqueline Olson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes. Specifically, the alleged debt was a personal credit card account.

5. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

6. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Midland is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

8. Defendant Midland Funding LLC, ("Midland Funding") is a Delaware corporation with its principal place of business located in California. The Wisconsin Department of Financial Institutions lists Midland Funding's address as 3111 Camino Del Rio North, San Diego, CA 92108. Midland Funding's actual address may be MCM's address.

9. Midland Funding is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time Midland Funding acquires them. MCM uses the mails and telephone to collect consumer debts originally owed to others and currently held by Midland Funding. Midland Funding, directly or indirectly, is a debt collector under this arrangement. 15 U.S.C. § 1692a(6).

10. A creditor is a debt collector under the FDCPA if "in the process of collecting his own debts, [the creditor] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002) (quoting 15 U.S.C. § 1692a(6)).

11. A creditor is a debt collector under the plain language of the WCA, which does not distinguish between creditors and third-party debt collectors. Wis. Stat. § 427.103(3).

12. Midland Funding acts under the name of third party debt collectors, including MCM, to collect its debts.

13. A company meeting the definition of a "debt collector" (here, Midland Funding) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

**FACTS**

14. Plaintiff entered into several consumer transactions with Comenity Bank ("Comenity") arising from personal "store brand" credit card accounts with the following stores: Woman Within; King Size; Brylane; and Roamans.

15. Prior to October 7, 2016, Plaintiff's accounts with Comenity went into default.

16. Prior to October 7, 2016, and after Plaintiff's accounts with Comenity were in default, Comenity sold or otherwise assigned the ownership rights to Plaintiff's accounts to Midland Funding.

17. On or about October 7, 2016, MCM mailed four debt collection letters to Plaintiff regarding four, separate alleged debts, allegedly owed to Midland Funding and originally owed to Comenity. Copies of these letters are attached to this complaint as Exhibits A-D.

18. The alleged debts identified in Exhibits A-D were for personal credit card accounts used only for personal, family or household purposes.

19. Upon information and belief, Exhibits A-D are form letters, generated by computer, and with the information specific to Plaintiff's accounts inserted by computer.

20. Upon information and belief, Exhibits A-D are form debt collection letters used by Midland Funding through MCM to attempt to collect alleged debts.

21. Exhibits A-D contain bold, all-capitalized text at the top of the letters:

**NOTICE OF NEW OWNERSHIP *AND* PRE-LEGAL REVIEW**

22. Exhibits A-D also contain the following:

Midland Credit Management, Inc. is considering forwarding this account to an attorney in your state for possible litigation. However, such forwarding will not occur until after the expiration of the validation period described on the back of this letter. Upon receipt of this notice, please call to discuss your options.

If we don't hear from you or receive payment by 11-21-2016, we may proceed with forwarding this account to an attorney.

23. Exhibits A-D also state the following:

**➢ This may be your last chance to work with us before the account goes to an attorney.**

24. Exhibits A-D also contain the following:

**LET US HELP YOU!** If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. **We encourage you to call us: (800) 939-2353.**

25. The above language in Exhibits A-D is false, misleading and confusing to the unsophisticated consumer.

26. At the time Exhibits A-D were sent to Plaintiff, neither Midland Funding nor MCM intended to sue Plaintiff, even if no payments were made on the account by 11-21-2016.

27. Despite the clear language threatening to send the account to "an attorney in your state . . . if we don't hear from you or receive payment by 11-21-2016," neither Midland Funding nor MCM filed a lawsuit against Plaintiff.

28. In fact, Plaintiff's accounts were not forwarded to an attorney network.

29. Rather, on or about February 24, 2017, MCM mailed four debt collection letters to Plaintiff regarding four, separate alleged debts, allegedly owed to Midland Funding and originally owed to Comenity. Copies of these letters are attached to this complaint as Exhibits E-H.

30. The alleged debts identified in Exhibits E-H are the same alleged debts identified in Exhibits A-D.

31. Upon information and belief, Exhibits E-H are form letters, generated by computer, and with the information specific to Plaintiff's accounts inserted by computer.

32. Upon information and belief, Exhibits E-H are form debt collection letters used by Midland Funding through MCM to attempt to collect alleged debts.

33. Exhibits E-H contain bold, all-capitalized text at the top of the letters:

**PRE-LEGAL NOTIFICATION**

34. Exhibits E-H also contain a set-off text box, with bold text:

**Please Call**

**Get rid of this debt and get on with your life.**

**This account may be forwarded to an attorney in your state.**

35. Exhibits E-H also contain the following:

Midland Credit Management, Inc. has made several attempts to contact you regarding this account. This letter is to inform you that we are considering forwarding this account to an attorney in your state for possible litigation. Upon receipt of this notice, please call (800) 939-2353 to discuss your options.

If we don't hear from you or receive payment by 03-11-2017, we may proceed with forwarding this account to an attorney.

36. Exhibits E-H also contain the following:

**LET US HELP YOU!** If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. **We encourage you to call us: (800) 939-2353.**

37. The above language in Exhibits E-H is false, misleading and confusing to the unsophisticated consumer.

38. At the time Exhibits E-H were sent to Plaintiff, neither Midland Funding nor MCM intended to sue Plaintiff, even if no payments were made on the account by 03-11-2017.

39. Despite the clear language threatening to send the account to "an attorney in your state . . . if we don't hear from you or receive payment by 03-11-2017," neither Midland Funding nor MCM filed a lawsuit against Plaintiff.

40. A search of CCAP shows no civil actions filed by Midland Funding or MCM against Plaintiff in Wisconsin since 2005.

41. Exhibits A-H do not attempt to collect any debt included in the 2005 action. Moreover, CCAP indicates that the judgment in the 2005 action has been fully satisfied. http://tinyurl.com/ybybr5ow.

42. An unsophisticated consumer would understand that Exhibits A-D threaten a lawsuit, and/or imply that legal action will be taken unless payment or a phone call is made by 11-21-2016 and that Exhibits E-H threaten a lawsuit, and/or imply that legal action will be taken unless payment or a phone call is made by 03-11-2017.

43. Debt collection letters that falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made," violate the FDCPA. 15 U.S.C. § 1692e(5); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 24-26 (2d Cir. 1989).

44. Even indirect or oblique threats give rise to liability, provided they indicate that "legal action is underway or contemplated in the near future." *Jenkins*, 999 F. Supp. At 1136.

45. The unsophisticated consumer would interpret the "pre-legal" status and the statements that "if we don't hear from you or receive payment by 11-21-2016 [or 03-11-2017], we may proceed with forwarding this account to an attorney" as threats that the accounts are on a litigation track.

46. The threat of litigation in Midland's letter is false and misleading and exists only to unfairly scare consumers.

47. Plaintiff was confused by Exhibits A-H.

48. The unsophisticated consumer would be confused by Exhibits A-H.

49. Plaintiff had to spend time and money investigating Exhibits A- H.

50. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-H.

***The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.***

51. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru*

*Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

52. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

53. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

54. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177

(W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

55. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to

encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

56. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

57. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

58. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

59. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

60. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

***The Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.***

61. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

62. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country,"

and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

63. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

64. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

65. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

66. The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

67. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

68. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

69. The WCA specifically allows a person to recover punitive damages "in appropriate cases." Wis. Stat. § 425.301(1); *Gonzales v. Kohn Law Firm, S.C.*, No. 13-CV-168, 2014 U.S. Dist. LEXIS 6750*10 (E.D. Wis. Jan. 17, 2014).

70. Wis. Stat. § 427.104(1)(h) prohibits: "Engag[ing] in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."

71. Wis. Stat. § 427.104(1)(L) prohibits: "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. Count I is brought against Defendant MCM.

74. Exhibits A-D falsely threaten to send Plaintiff's account to an attorney and/or threaten a lawsuit against Plaintiff if Plaintiff does not pay or call MCM by 11-21-2016.

75. At the time Exhibits A-D were sent, neither MCM nor Midland Funding intended to file a lawsuit against Plaintiff even if Plaintiff did not pay or call by 11-21-2016.

76. Exhibits E-H falsely threaten to send Plaintiff's account to an attorney and/or threaten a lawsuit against Plaintiff if Plaintiff does not pay or call MCM by 03-11-2017.

77. At the time Exhibits A-D were sent, neither MCM nor Midland Funding intended to file a lawsuit against Plaintiff even if Plaintiff did not pay or call by 03-11-2017.

78. Defendants' conduct violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

**COUNT II – WCA**

79. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80. Count II is brought against both Defendants.

81. Exhibits A-D threaten and imply legal action notwithstanding the fact that Midland did not intend to forward the letter to an attorney network even if Plaintiff did not pay or call by 11-21-2016.

82. Exhibits E-H threaten and imply legal action notwithstanding the fact that Midland did not intend to forward the letter to an attorney network even if Plaintiff did not pay or call by 03-11-2017.

83. Such conduct violates Wis. Stat. §§ 427.104(1)(L) and 427.104(1)(h).

**CLASS ALLEGATIONS**

84. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form(s) represented by Exhibits A, B, C or D to the complaint in this action, (c) seeking to collect debt(s) incurred for personal, family or household purposes, (d) and who were subsequently sent collection letters in the form(s) represented by Exhibits E, F, G, or H, for the same debt(s) (e) and which debts Midland did not send to an attorney licensed to practice in Wisconsin, (f) between August 17, 2016 and August 17, 2017, inclusive (g) that were not returned by the postal service.

85. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

86. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-H violate the FDCPA and/or WCA.

87. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

88. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

90. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: August 17, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin

Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com